IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Case No. CR06-0079 |
| vs. | REPORT AND RECOMMENDATION |
| TED SANGER, | |
| Defendant. | |

This matter comes before the court pursuant to the defendant's July 14, 2006, motion to suppress evidence (docket number 13). This matter was referred to the undersigned United States Magistrate Judge for the issuance of a report and recommendation. The court held an evidentiary hearing on the motion on August 3, 2006, at which the defendant was present and represented by Raphael Scheetz. The government was represented by Assistant United States Attorney Matt Cole. It is recommended that the motion to suppress be denied.

In the motion, the defendant contends that the warrantless search of his residence on July 24, 2003, violated the Fourth Amendment to the United States Constitution. Alternatively, the defendant argues that, if the initial entry was justified, police exceeded the scope of any legitimate warrantless search. The government contends that exigent circumstances permitted the entry by the police into the defendant's residence on that day, that they observed marijuana and drug paraphernalia in plain view, and that the police appropriately observed the scope of the warrantless search and retreated from the house to secure a warrant. The court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

On July 24, 2003, the defendant's neighbor, Gale Hoffner, heard a crashing sound at the defendant's residence. As he looked toward the defendant's residence he saw someone bending over going into the back door of the residence. It appeared to Mr. Hoffner that the person was a burglar who had kicked in the back door of the defendant's residence. This happened at approximately 2:45 p.m. That residence is appropriately seven blocks from the police department in the very small town of Clarence, Iowa.

Hoffner went to the police station and told the newly-hired Chief of Police, Brian Utter, what he had observed. Minutes later, Chief Utter and another police officer met in the alley behind the defendant's residence. Chief Utter went around the front and observed that the front door to the residence was closed. He went to the rear door and observed that the back door appeared to have been kicked in. See Government's Exhibits 1 and 2. With their firearms drawn, the officers entered the residence yelling, "Police," "Is there anybody in here," and "Come out with your hands up." The interior of the house was so messy that it appeared to have been ransacked.

The defendant's residence is a small home with several rooms on the main floor, no upstairs, and a basement that had no staircase. The officers entered each room of the residence and checked in closets or other places where a burglar could hide. They shined flashlights into the basement. As they searched for the burglar, they observed numerous items of drug paraphernalia in plain view. They also saw a transparent jar that contained baggies of what appeared to be marijuana. As the police checked a bedroom closet, they found a number of long guns. They further observed a plastic box next to the marijuana that contained a 9mm Baretta handgun. Chief Utter immediately recognized the box as such by reason of the fact that he carries the same weapon. There was also a box of ammunition by the marijuana. See Government's Exhibit 10. Following the completion of their cursory search for potential burglars, the officers left the residence to contact the

Bear Creek Drug Task Force. Chief Utter did not seize the items of contraband or the firearms in plain view because he knew it was better to secure a search warrant. A warrant was secured (Plaintiff's Exhibit 19). When the house was searched, additional controlled substances and drug paraphernalia were seized from the residence.

The defendant and his friend testified at the suppression hearing. The defendant's friend testified that he and the defendant had brought large panels of drywall into the residence approximately one week prior to the search. The defendant contends that the drywall was placed in front of the doors to the closet in which the long guns were found by the police. The defendant therefore contends that the police exceeded the scope of a search for a burglar because a burglar could not enter the closet and replace the drywall in front of the closet door. The defendant further testified that Exhibits 4, 5, 11, 12, and 14 are not photographs of his residence. He admits that Exhibits 1, 2, 3, 6, 7, 8, 9, 10, 13, 15, 16, and 17 are photographs of his residence but contends that paraphernalia such as that depicted in Exhibits 6, 8, 15, and 16 were not in plain view as the police testified.[1] The defendant admitted that the clear jar containing baggies of marijuana would have been visible to the police, that a box of spent ammunition was next to the marijuana and that it was possible, although unlikely, that the police could have observed the 9mm handgun box without disturbing a pile of clothing that he had placed on top of the box. The defendant's friend did not recognize the drug paraphernalia in the pictures but testified that he had seen drug paraphernalia at the defendant's residence on other occasions.

---

[1]The defendant denies that drug paraphernalia was left by him throughout the house. This testimony is inconsistent with the generally messy nature of the defendant's residence, his admission that the marijuana was sitting out in a clear jar in plain view, and his friend's observation of drug paraphernalia there on other occasions. This court believes that there were numerous items of drug paraphernalia present in plain view when the police entered the residence.

3

There are confusing discrepancies in the record.² However, several things are clear. First, the police's only motivation to go to the defendant's residence arose out of a contact from a concerned neighbor who truly believed that he observed a burglar kick in the defendant's back door. Second, once the police came to the residence, they observed the badly broken back door which gave every indication it had recently been kicked in.³ Third, upon entering this small home, the police had their guns drawn and were screaming for the potential burglar to surrender. Almost immediately upon entering, the police observed numerous items of drug paraphernalia and the baggies of marijuana in plain view. Finally, the police did not exceed the scope of the search by checking all closets regardless of whether drywall was in front of the door or not. The police had the right, and probably the obligation, to examine every space where a burglar could be found.

## CONCLUSIONS OF LAW
### Initial Entry into Defendant's Residence

The Fourth Amendment dictates that every search or seizure by a government agent must be reasonable. U.S. CONST. amend. IV. However, "[a] warrantless search is reasonable when justified by both probable cause and exigent circumstances." United States v. Parris, 17 F.3d 227, 229 (8th Cir.), cert. denied, 511 U.S. 1077 (1994); See also Radloff v. City of Oelwein, 380 F.3d 344, 348 (8th Cir. 2004), cert. denied, 543 U.S. 1090 (2005) (noting that "[a]n exception to the warrant requirement permits an officer to

---

²Chief Utter testified that the search for the potential burglar took one to two minutes. The other officer concurred but stated that they stayed for approximately fifteen minutes. There is no explanation as to what was done during this extended period of time. However, the police were careful to limit their search for a potential burglar. They did not seize items, even those in plain view, prior to the securing of a search warrant.

³One police officer remembers carpentry tools by the door, the other does not. Regardless of this discrepancy, it is very hard to describe the damage to the defendant's back door as any form of carpentry. If it was, it sure did not look like it and the officers were justified in believing that a burglary was in progress.

enter a home if he or she acts with probable cause in the presence of exigent circumstances"). "To determine the existence of probable cause, we look at the totality of the circumstances as set forth in the information available to the officers." United States v. Kelly, 329 F.3d 624, 628 (8th Cir. 2003) (citing Illinois v. Gates, 462 U.S. 213, 230-39). Probable cause exists when "the available facts and circumstances are sufficient to warrant a person of reasonable caution to believe that an offense was being or had been committed." Id. (citing Dunaway v. New York, 442 U.S. 200, 208 n.9).

"The exigent circumstances exception to the warrant requirement is narrowly drawn." United States v. Ball, 90 F.3d 260, 263 (8th Cir. 1996). The government bears the burden of establishing that exigent circumstances existed. Id. In order to determine whether exigent circumstances justified a warrantless entry, the court uses an objective standard when considering the reasonableness of a police claim that such circumstances confronted police at the time of entry. United States v. Leveringston, 397 F.3d 1112, 1116 (8th Cir. 2005) (citing United States v. Morales, 737 F.2d 761, 764 (8th Cir. 1984); United States v. Selberg, 630 F.2d 1292, 1295-96 (8th Cir. 1980)). The critical time for determining whether an exigency exists "is the moment of the warrantless entry by the officers onto the premises of the defendant." United States v. Smith, 2006 WL 994636, 11 (D. Neb.) (8th Cir. 2006) (citing United States v. Morgan, 743 F.2d 1158, 1162 (6th Cir. 1984)).

In the present case, the police officers arrived at defendant's residence in order to investigate an alleged burglary in progress reported by defendant's neighbor. The officers observed that, consistent with the neighbor's report, the defendant's back door appeared to have been kicked in. The officers entered immediately with their guns drawn, yelling warnings acknowledging that they were police officers. The court finds that the report from the neighbor and the officer's observation of the defendant's obviously damaged back door provided probable cause for the officers to believe that a burglary was being or had been committed.

5

As part of their "routine community caretaking functions," police officers may enter premises where there exists "direct evidence of a home invasion." See United States v. Meixner 128 F. Supp.2d 1070, 1073-1074 (E.D. Mich., 2001) (internal citations omitted ). See also Walker v. Disner, WL 31420772, 2 (10th Cir. 2002) (unpublished) (court finds that where "officers had received a burglary call, and upon arriving at the apartment, observed signs of a burglary, [the police officer's] entry into, and brief search of, the apartment were lawful pursuant to the emergency exception to the warrant requirement") (citing United States v. Tibolt, 72 F.3d 965, 970-71 (1st Cir. 1995) (holding that responding to report of possible burglary is exigent circumstance authorizing warrantless entry into home); See also United States v. Singer, 687 F.2d 1135, 1144 (8th Cir. 1982) (holding that where "it seemed apparent that a burglary was in progress; these circumstances justified a warrantless entry into the dwelling itself." Id.). The Singer court further noted that "[i]t would defy reason to suppose that [the police officer] had to leave the area and secure a warrant before investigating, leaving the putative burglars free to complete their crime unmolested. It is only 'unreasonable' searches and seizures that the fourth amendment forbids." Id. This court agrees, finding that the police officers' entry into defendant's residence to investigate a possible burglary constituted an exigent circumstance.

**Scope of Legitimate Search/Protective Sweep**

The Supreme Court, in Maryland v. Buie, 494 U.S. 325, 327 (1990), established a two-prong test for determining whether a protective sweep incident to an arrest was constitutionally permissible. First, in order to protect themselves from harm, law enforcement officers may "as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." 494 U.S. at 334. Second, the Court allows a broader search "when the searching officer possesses a reasonable belief based on specific and articulable facts that the area to be swept harbors an individual

posing a danger to those on the arrest scene." 494 U.S. at 337 (internal citations omitted). An officer's belief must be based upon "specific and articulable facts." United States v. Boyd, 180 F.3d 967, 975 (citing United States v. Cunningham, 133 F.3d 1070, 1073 (8th Cir. 1998)). Evidence discovered in plain view during the course of a protective sweep is admissible at trial. Id. at 976.

The Eighth Circuit applies the second Buie prong to non-arrest situations, "which requires a showing of a reasonable suspicion of dangerous individuals in the house." United States v. Waldner, 425 F.3d 514, 517 (8th Cir. 2005) (noting that the Court would not extend Buie to allow application of the first prong to non-arrest situations). Other circuits also apply the second prong to non-arrest situations. Id. See United States v. Gould, 364 F.3d 578, 584 (5th Cir. 2004) (en banc); United States v. Taylor, 248 F.3d 506, 513-14 (6th Cir. 2001); United States v. Garcia, 997 F.2d 1273, 1282 (9th Cir. 1993); United States v. Daoust, 916 F.2d 757, 758-59 (1st Cir. 1990)). Lastly, a protective sweep "is not a full search of the premises, but may extend only to a cursory inspection of those spaces where a person may be found. The sweep lasts no longer than is necessary to dispel the reasonable suspicion of danger." 494 U.S. at 335-36.

Applying the second Buie prong, the government must show that the police officers reasonably suspected the presence of dangerous individuals. As noted previously, the officers possessed probable cause to believe that a burglary was or had been committed and subsequently conducted a protective sweep searching for one or more burglars. The defendant testified that he and his friend had placed drywall in front of the closet containing the guns approximately six days earlier. Thus the defendant argued that the police exceeded the scope of the search by moving the drywall to search the closet as it was impossible for a burglar to hide in the closet and also be able to replace the drywall in front of the closet. The police officers testified that no drywall blocked the closet doors. However, even if drywall blocked the closet doors, the court finds that the officers reasonably searched all rooms of the house and closet areas in order to determine whether

7

there was a burglar present.  See United States v. Boyd, 180 F.3d 967, 976 (noting that law enforcement officers have no way of knowing how many people are present when they enter a house) (citing United States v. Horne, 4 F.3d 579, 586 (8th Cir. 1993)).

### Plain view

"Under the plain view doctrine, 'if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant.'" United States v. Gillon, 348 F.3d 755, 759 (8th Cir. 2003) (citing Minnesota v. Dickerson, 508 U.S. 366, 375 (1993)).  "To satisfy the 'immediately apparent' standard, it is not necessary that a law enforcement officer know with certainty that an item is contraband or evidence of a crime." United States v. Murphy, 261 F.3d 741, 744 (8th Cir. 2001) (citing United States v. Garner, 907 F.2d 60, 62 (8th Cir. 1990)).  All that is required to satisfy the "immediately apparent" requirement is probable cause to associate the item or items at issue with criminal activity.  Id. at 744 (citing Texas v. Brown, 460 U.S. 730, 741-42 (1983) (citing Payton v. New York, 445 U.S. 573, 587 (1980))).  See United States v. Ameling, 328 F.3d 443, 448 (8th Cir. 2003) (quoting United States v. Arvizu, 534 U.S. 266, 272 (2002) ("While each individual action [or item] taken by [or in possession of] the defendants could be susceptible to innocent explanation, their behavior [or the items] must be considered as a whole and in the light of the officers' 'experience and specialized training.'")).

As previously established, the police officers lawfully entered the defendant's residence in order to investigate a reported burglary in progress.  While securing the premises, the police officers observed drug paraphernalia, weapons, and a transparent jar that contained baggies of what appeared to be marijuana.  The plain view doctrine justifies immediate seizure of items immediately apparent as associated with criminal activity.  However, the officers took a cautious route by deciding to leave and obtain a search warrant prior to seizing the items. The court finds the officers' actions justified.

The defendant contends that the police exceeded the scope of their search by moving clothing that partially obscured the 9mm handgun box, that the baggies of marijuana were in a covered container. The defendant admitted that it was possible that the handgun box was visible under the clothing. Further, the defendant acknowledged that the jar containing the baggies was clear and therefore likely was visible to the police without opening the lid. The gun was in plain view as was the box of ammunition and they were in very close proximity to the defendant's marijuana. The box was immediately recognized as a Baretta 9mm handgun box. The police had the right to immediately seize the weapon.

For the reasons discussed above, **IT IS RECOMMENDED**, unless any party files objections[4] to the Report and Recommendation within ten (10) days the date of the report and recommendation, that the defendant's July 14, 2006, motion to suppress (docket number 13) be denied.

August 9, 2006.

JOHN A. JARVEY
Magistrate Judge
UNITED STATES DISTRICT COURT

---

[4] Any party who objects to this report and recommendation must serve and file specific, written objections within ten (10) court days from this date. A party objecting to the report and recommendation must arrange promptly for a transcription of all portions of the record the district court judge will need to rule on the objections.

9